UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 07-50057 |
| versus | JUDGE STAGG |
| GREGORY J. HILL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Before the court is Defendant's Motion to Suppress (Doc. 12). The sole issue presented in the motion is whether Defendant gave consent to search his vehicle following a traffic stop. Because the facts show that Defendant freely and voluntarily consented to a search of his vehicle following a valid traffic stop, it is recommended that Defendant's Motion to Suppress be denied.

**The Facts**

An evidentiary hearing on Defendant's motion was scheduled for August 17, 2007. At the hearing, both parties agreed to waive the hearing and submit the motion on the briefs, together with the video of the stop (Government Exhibit 1) and a written transcript of the audio recording of the stop (Government Exhibit 2). Accordingly, the following summary of the facts is based on the video, audio and transcript.[1]

---

[1] The digital video of the stop is contained on a CD-Rom, which is playable only on a computer. There are two video tracks and two sound tracks on the CD. One video is from the dash camera and shows the traffic stop and search of Defendant's car; the other

On February 1, 2007, Officer Sotak of the Shreveport Police Department stopped Defendant's vehicle for a traffic violation (no brake light).  Defendant admits in his motion that the initial stop was valid, and the video clearly shows that Defendant's vehicle's right rear brake light was not operating.  The stop occurred in the 2600 block of Darien Street in Shreveport, an area known by the court to be a high-crime area.

As Officer Sotak exited his patrol car and approached Defendant's vehicle, Defendant opened the driver's side door. (The driver's side door remained open for the remainder of the stop.)  Officer Sotak introduced himself and told Defendant to remain in his vehicle. Video at 9:26:00.  Officer Sotak explained the reason for the traffic stop and asked Defendant for his driver's license and insurance.  Defendant responded that he did not have a driver's license (or any other kind of identification) but he did have proof of insurance. Because defendant had no form of identification, Officer Sotak asked Defendant to step out of his vehicle, and Officer Sotak conducted a Terry pat-down of Defendant.  Defendant was found to have a large amount of money on his person. Officer Sotak also smelled the odor of burnt marijuana in the vehicle.

Officer Sotak asked Defendant to have a seat in the rear of the patrol car until Officer Sotak could determine Defendant's identity.  9:27:20.  Defendant was not handcuffed and he was allowed to keep possession of his cell phone.  While Defendant was seated in the

---

video shows the back seat of the patrol car.  One audio is connected to the officer's microphone; the other audio plays the sounds and voices from inside the patrol car.

back of the patrol car, the following exchange occurred between Officer Sotak and Defendant:

> Sotak: "Is it all right if I look in your car?..." 9:27:38.
>
> Hill: "Look in my car? What for?"
>
> Sotak: "Okay, listen to me now okay. Listen to me now, listen to me, is there something in that car that is not supposed to be there?"
>
> Hill: "No sir."
>
> Sotak: "Okay, so you don't have any problem if I look?"
>
> Hill: "No, no but can I look when you look? I just want to be right there, you can put the handcuffs on me and everything, just let me be right there." 9:27:51.
>
> Sotak: "I am not going to let you back out this car because I don't know who you are, okay."
>
> Hill: "I can tell you who I am."
>
> Sotak: "Okay let's start out with why are you shaking right now? Because I think that there's something in that car now."

Following a discussion regarding Defendant's name, date of birth and address, Officer Sotak told Defendant: "I am just going to get your insurance and everything." Officer Sotak then approached the driver's side door (which was still open) and leaned slightly into Defendant's vehicle. 9:29:16. Officer Sotak then reached down next to the driver's seat and

picked up a plastic Ziploc bag that was observed in plain view from the open door of the vehicle. Officer Sotak brought the bag to Defendant and stated: "Okay, this is sitting, this is sitting next to that seat. I am giving you one last chance. Is there, are there drugs in that car?" Defendant responded: "No sir, but I don't know how that did get there." Officer Sotak responded: "Okay, well, like I said, I didn't have to look anywhere. It was just sitting right there next to the seat."

Officer Sotak then returned to Defendant's vehicle. Officer Sotak looked in the center console of the vehicle and discovered crack cocaine. He then walked back and placed the crack cocaine on the hood of his patrol car. 9:30:20. Officer Sotak then returned to Defendant's vehicle and discovered a pistol in the rear seat passenger area. 9:30:58. Defendant was advised of his rights pursuant to <u>Miranda</u>, and he denied knowledge of the drugs and gun.

**Analysis**

The sole issue presented in Defendant's Motion to Suppress is whether Defendant consented to a search of the vehicle. According to Defendant's Memorandum in Support of Motion to Suppress:

> Hill was asked twice by Officer Sotak if it would be okay for him to search the vehicle. After the second request, Hill said that it would not be a problem but he would have to be present for the search of the vehicle to take place. It should have been clear to this trained officer that he did not have the consent of Hill to go in to the car for any reason without obtaining a warrant.

The Government disputes Defendant's characterization of his response to Officer Sotak's request for consent to search the vehicle. The Government argues that Defendant's response ("No, no but can I look when you look?") was reasonably considered consent to search the vehicle. The Government also points out that the red Ziploc bag was discovered in plain view inside Defendant's car and that Officer Sotak smelled burnt marijuana when he first approached the vehicle. Finally, the Government argues that Officer Sotak's entry into Defendant's vehicle was a valid <u>Terry</u> pat-down of the vehicle.

**Consent to Search**

A consensual search is a well-settled exception to the warrant requirement. <u>United States v. Navarro</u>, 169 F.3d 228, 231 (5th Cir. 1999). In determining whether a search based upon consent is valid, the Government must prove that the search was voluntary and that the Defendant consented to the search or consent was obtained from a third party with the ability to give valid consent. <u>United States v. Jenkins</u>, 46 F. 3d 447, 451-452 (5th Cir. 1995).

In determining whether a consent to search is voluntary, the Fifth Circuit reviews several factors, not one of which is dispositive. These factors include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. <u>Navarro</u>, <u>supra</u>.

Defendant does not contend that his consent was involuntary or that any coercive police procedures were employed. Indeed, Defendant argues that he did not consent at all. However, the facts as revealed in the video, audio and transcript of Defendant's conversation with Officer Sotak do not support Defendant's argument. When Officer Sotak asked Defendant if he could search the car, Defendant responded "No, no but can I look when you look? I just want to be right there, you can put the handcuffs on me and everything, just let me be right there."

According to Defendant, his statement of consent was coupled with a *condition* that he be let out of the patrol car and allowed to stand by Officer Sotak as the search was conducted. The more reasonable and literal construction of Defendant's statement is that Defendant gave his consent coupled with a *request* that he be allowed to observe the search. Defendant was asked if he a problem if the officer searched his car. He did not answer: "No, but you can search only *if* you allow me to stand next to you during the search." Rather, Defendant said, "No, no *but can I* look when you look? I just *want* to be right there ...." Officer Sotak reasonably and objectively construed Defendant's statement as consent to search together with a request to be present, which request Sotak had no obligation to honor and that he reasonably denied due to the obvious safety concerns associated with an unidentified suspect being near an officer whose attention is focused on searching a car.

Based on the exchange between Officer Sotak and Defendant, the undersigned finds that Defendant did, in fact, consent to the search of his vehicle. There is no indication (or

even argument) that Defendant's consent was not voluntarily given. Defendant was not handcuffed and had not been arrested. Officer Sotak did not employ any coercive police procedures. Furthermore, Defendant was cooperative with Officer Sotak. The totality of the evidence shows that Defendant's consent was freely and voluntarily given.

**Smell of Marijuana**

As an additional basis to support the search of Defendant's vehicle, the Government points out that Officer Sotak smelled the odor of burnt marijuana when he first approached Defendant's vehicle. The Fifth Circuit has repeatedly held that the smell of marijuana gives rise to probable cause to search a vehicle for drugs. See, e.g., United States v. Lork, 132 Fed. Appx. 34 (5th Cir. 2005)(detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. McSween, 53 F.3d 684, 686-687 (5th Cir. 1995)(the smell of marijuana alone may be enough for a finding of probable cause); United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989) (the officer's detection of marijuana "in itself ... justified the subsequent search of [the defendant's] vehicle"); United States v. Henke, 775 F.2d 641, 645 (5th Cir.1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); United States v. Gordon, 722 F.2d 112, 114 (5th Cir.1983) (same); United States v. McLaughlin, 578 F.2d 1180, 1183 (5th Cir.1978) (same).

In this case, the smell of marijuana, together with Defendant's lack of identification, the Ziploc bag in plain view, Defendant's extreme nervousness (shaking) and Defendant's

location in a high-crime neighborhood combined to provide Officer Sotak with probable cause to search Defendant's vehicle. Accordingly, setting aside the issue of Defendant's consent, the existence of probable cause supports the search of Defendant's vehicle.

**Conclusion**

The video, audio and transcript of the traffic stop shows that Defendant freely and voluntarily consented to a search of his vehicle. Despite Defendant's contentions to the contrary, Defendant did not condition his consent to the search on his ability to be present next to Officer Sotak as the search was conducted. He simply consented to the search and then asked to be present. Furthermore, the smell of marijuana, Defendant's lack of identification, his extreme nervousness, the discovery of the Ziploc bag in plain view and Defendant's presence in a high-crime neighborhood, gave Officer Sotak probable cause to search the vehicle for drugs. Accordingly, the court need not reach the Government's additional argument that the crack cocaine and handgun were discovered by Officer Sotak during a proper Terry-type protective pat-down of Defendant's vehicle.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 12)** be **denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of August, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE